UNION PACIFIC RAILROAD CO., PLAINTIFF IN ERROR, V.
MICHAEL O'HERN, DEFENDANT IN ERROR.

1. **Verdict.** Upon an examination of the evidence, it was *Held*, That the verdict of the jury was sustained thereby.

2. **Injuries to Person:** DAMAGES: VERDICT. In an action for damages, resulting from a personal injury, where the court instructed the jury, in substance, that if they found from the evidence that the labor in which the plaintiff was engaged for defendant under employment was of a dangerous character, and of which the plaintiff had knowledge, that he could not recover, but the testimony of the witnesses was contradictory as to whether the employment was dangerous or not, it was *Held*, That the verdict of the jury finding in favor of the plaintiff was sustained by sufficient evidence, and would not be molested.

ERROR to the district court for Douglas county. Tried below before WAKELEY, J.

*John M. Thurston, W. R. Kelly,* and *Joel S. Shropshire,* for plaintiff in error.

*J. T. Moriarty* and *J. J. O'Connor,* for defendant in error.

REESE, CH. J.

This was an action for damages resulting from a personal injury to defendant in error while in the employ of plaintiff in error. The trial in the district court resulted in a verdict in his favor, and upon which judgment was rendered.

The motion for a new trial assigned two reasons or grounds therefor, as follows:

"*First,* That the verdict is not sustained by sufficient evidence, and is contrary to law.

"*Second,* For errors in law occurring on the trial, and excepted to by defendant."

The principal contention of plaintiff in error is, that the verdict is not sustained by the evidence, and that under the instructions of the court given to the jury as applicable to the evidence, the verdict should have been in favor of plaintiff in error.

It appears from the evidence that defendant in error was employed by the proper employing agent of plaintiff in error to assist in removing signal posts from along the line of the railroad track, and when necessary replace those removed with new ones.   The method of removing the posts was ·by removing the earth in which they were planted, with a spade or shovel, and lifting the post from the ground by hand.   About one week after he had commenced the work assigned him in his employment, the person under whom he was placed changed the method of removing the posts, by which a rope or cable sixty or seventy feet in length was made fast to one of the cars in the train with which they were connected, and as the train approached the post its speed was slackened so that one of the hands could get off, seize the detached end of the rope which was thrown out of the car by a fellow workman, run to the post, wrap it around it, and then hold to the outer end of the rope to prevent it slipping, and upon the rope being made taut by the motion of the train, the post was pulled out of the ground or broken off, when the person holding the end of the rope would relax his hold and allow the post and rope to fall to the ground.   Sometimes the rope would become detached from the post and the train would pass on, the rope being drawn in by the person remaining in the car.,   At other times the rope would not become detached from the post, and the train would stop, when it could be removed.   It was while engaged in this kind of labor that defendant in error received his injury.   He placed the rope around the post and held it, but when the post fell the rope did not become detached, when he ran up to it to unloose the rope as the post was

being dragged upon the ground. While thus engaged the forward end of the post met with an obstruction by which it was thrown around violently, striking him and injuring him. In their efforts to remove the post by the method last named no part of the earth was removed. The post was generally planted about three feet deep in the earth. When the rope was made taut the movement of the train was with such momentum that the post was jerked from the ground or broken, or the rope was broken.

Upon the branch of the case that the verdict is not supported by sufficient evidence, we can only say that, while the evidence on the part of defendant in error was not as clear as might be desired upon some of the leading features of the case, yet there was sufficient to sustain the verdict.

The next contention is, that defendant in error was guilty of contributory negligence in adjusting the rope to the post. It is claimed that he persistently wrapped the rope around the post oftener than was necessary in order to its removal, and by so wrapping it he rendered it more liable to be entangled and drag the post. This contention is sustained by the testimony of the witnesses examined on the part of plaintiff in error, but is not sustained by the testimony of defendant in error. Sometimes, by reason of the sandy or loose condition of the soil, the post was easily removed; at other times, when planted in solid earth, it was difficult to remove. In such cases it became necessary to wrap the rope around the post oftener than in the other cases referred to. He testified that at times the rope would slip from the post, when the train would have to be stopped and back up in order that another hitch might be taken. In such cases, using his own language, "The boss would give me fits."

From a careful examination of the testimony introduced, we are of the opinion that from all the circumstances of the case it was the province of the jury to decide upon the

whole evidence as to the question of contributory negligence, and with their verdict we must be content.

A number of instructions were given to the jury, both upon the court's own motion and upon the request of the plaintiff in error, to the effect that if the jury found that the employment was a dangerous one, and that defendant in error was aware of such danger, and continued in the employ of plaintiff in error with a knowledge of the dangerous nature of his work, he could not recover.

It is contended that by these instructions, when applied to the evidence, the verdict should have been in favor of plaintiff in error. Defendant in error testified that he conceived the work to be dangerous, and so notified the foreman under whom he labored, but that he was directed to proceed with it, and that he exercised such care as he could considering the rapid movement necessary to perform the duties required. Upon the other hand, the foreman, or rather the supervisor of bridges and buildings, under whose direction the rope was used, testified that he was familiar with the work when prosecuted in the manner detailed, and that in his opinion it was not dangerous at all; that he never could see where there was any danger about it. It therefore becomes apparent that it was for the jury to say whether or not the employment was so dangerous as to prevent defendant in error from recovering for the injury received.

Upon this branch of the case, also, the jury have found against plaintiff in error.

We find no error in the record. The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.